UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPERATING ENGINEERS LOCAL 324,
et al.,

    Plaintiffs,

v.                                              Case No. 04-74409

SCOTT GILBERT, d/b/a              HONORABLE AVERN COHN
GREAT LAKES DRILLING, and
SCOTT GILBERT d/b/a DIVERSIFIED
BLASTHOLE DRILLING,

    Defendant.

_____/

## MEMORANDUM AND ORDER
## GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I.

This is an action under the Employment Retirement Income Security Act, 29 U.S.C. § 1132 and § 1145 (ERISA) seeking delinquent fringe benefit contributions. Plaintiffs, Operating Engineers Local 324 Pension Fund, Operating Engineers Local 324 Health Care Fund, Operating Engineers Local 324 Vacation and Holiday Fund, Operating Engineers Local 324 Retiree Benefit Fund, Operating Engineers Local 324 Apprenticeship Fund, and Operating Engineers Local 324 Defined Contribution Plan, are suing defendants Scott Gilbert d/b/a Great Lakes Drilling and Scott Gilbert d/b/a/ Diversified Blasthole Drilling, Inc. claiming that defendant failed to make fringe benefit contributions as required by a collective bargaining agreement (CBA).

Before the Court is plaintiffs' motion for summary judgment. A hearing on the motion was held on July 25, 2006 at which time the Court stated it would grant plaintiffs' motion on its claim for unpaid contributions and took its claim for liquidated damages under advisement. This memorandum memorializes the Court's ruling at the hearing and also finds that defendant is responsible for liquidated damages.

## II.  Background

Scott Gilbert (Gilbert) owned a drilling company operating under the assumed name of Great Lakes Drilling. On April 4, 1994, Gilbert, as owner of Great Lakes Drilling, entered into an Agreement with Local 324 in which Gilbert agreed to be bound by the terms of a CBA. The CBA required, among other things, that Gilbert make fringe benefit contributions on behalf of union employees. The Agreement was to be renewed automatically with the CBA. See Plaintiffs' Ex. A.

On November 4, 2003, Gilbert, as owner of Great Lakes Drilling, and Local 324 entered into an Addendum to the Agreement which essentially provided to the payment of higher wages and fringe benefits consistent with the CBA. See Plaintiffs' Ex. B.

From January 2004 to September of 2004, Great Lakes Drilling submitted contribution forms for fringe benefit contributions. See Plaintiffs' Ex. E.

Beginning in October 2004, Gilbert, through Diversified Blasthole Drilling, submitted contribution forms for fringe benefit contributions. This continued until September of 2005. See Plaintiffs' Ex. E.

On September 22, 2005, Gilbert, as owner of Diversified Blasthole Drilling, and Local 324 entered into an Addendum to Agreement, in which he agreed to be bound by higher wages and fringe benefits as set forth in the CBA. See Plaintiffs' Ex. F.

An audit was conducted on Gilbert, as owner of Great Lakes Drilling, for the period of January 2003 to March of 2005, which established that $9,494.79 is owed to the plaintiffs' in unpaid contributions plus liquidated damages for late payments in the amount of $18,059.11 and audit expenses in the amount fo $949.48.  See Plaintiffs' Ex. C.

At deposition, Gilbert testified that he does not object to the results of the audit except as to the liquidated damages amount.  See Plaintiffs' Ex. B at p. 15.  He also testified that he stopped operations under the name of Great Lakes Drilling in 1997 and Diversified Blasthole Drilling, Inc. was incorporated in 1997.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for

summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV.  Analysis

A.

ERISA provides a cause of action for the collection of unpaid contributions owed to employee benefit plans.  See 29 U.S.C. § 1145.  The question of the amount of damages to which Detroit Carpenters is entitled is governed by § 502(g)(2) of ERISA:

> **(2)** In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan in awarded, the court shall award the plan—
> **(A)** the unpaid contributions,
> **(B)** interest on the unpaid contributions,

>    **(C)** an amount equal to the greater of—
>       **(I)** interest on the unpaid contributions, or
>       **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>    **(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>    **(E)** such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2) (emphasis in original).

B.

As an initial matter, plaintiffs' authority for assessing liquidated damages comes from the CBA. Article VI, Section 7, entitled "Violation of Wages and/or Fringe Benefit Payment" provides in relevant part:

> Contributions are due on the 15th of the month following the month worked, with an additional 15 day grace period. Daily interest is assessed from the due date at the rate of 18% per annum on late contributions, i.e. those paid after the grace period.

Gilbert does not dispute that he owes unpaid contributions,[1] however, he does dispute that he owes late payments, i.e. liquidated damages. He argues that this claims for liquidated damages is based on an agreement (the CBA) that was never signed by Gilbert d/b/a Diversified Blasthole Drilling, Inc. He also says that he is not responsible for damages against Gilbert d/b/a Great Lakes Drilling when the alleged damages

---

[1] Gilbert says that after the audit, an "internal audit" revealed that $6,292.96 is owing in unpaid contributions, not the $9,494.48 as claimed in the audit.

occurred after Great Lakes Drilling ceased operations.

These arguments both require an examination into Gilbert's operations under the assumed name of Great Lakes Drilling and his operations under the corporate form of Diversified Blasthole Drilling, Inc.  Although Gilbert testified at deposition and states in an affidavit that he ceased operating under the name of Great Lakes Drilling in 1997, the record shows that Great Lakes Drilling submitted fringe benefit forms until September 2004.  Thus, Gilbert's argument that he should not be obligated for late payments after that time is unavailing.

Gilbert's main argument is that he should not be have to make late payments because Gilbert, as Diversified Blasthole Drilling, Inc., is not responsible for any obligations of Gilbert while he was operating under the assumed name of Great Lakes Drilling because Diversified Blasthole Drilling, Inc. did not sign a CBA with Local 324 and was "at all times an active corporation entity under the laws of Indiana," not merely a successor of Great Lakes Drilling.

This argument also falls short.  Gilbert fails to mention that although Diversified Blasthole Drilling, Inc. was established as an Indiana corporation in March of 1999, it was rendered inactive on February 17, 2005.  See Plaintiffs' Ex. D.  At that time, is became simply an assumed name.  It was not until January of 2006 that it was reinstated as a active corporation and remains active to this date.  See Defendants' Ex. C.  Thus, Gilbert's assertion that Diversified Blasthole Drilling, Inc. was an active corporation at all relevant times is not borne out by the record.

As to whether Gilbert, as d/b/a Diversified Blasthole Drilling should be responsible for Gilbert d/b/a/ Great Lakes Drilling's obligations, Gilbert submitted fringe

6

benefit forms under the name Diversified Blasthole Drilling (<u>without the Inc</u>.) from October 2004 through September 2005 for Local 324.[2]  It can only be concluded that Diversified Blasthole Drilling is a successor d/b/a/ of Scott Gilbert d/b/a/ Great Lakes Drilling for purposes of fringe benefit contributions under the CBA.  The forms submitted by Great Lakes Drilling and Diversified Blasthole Drilling have the same address.  The fact that Gilbert, under the assumed name of Diversified Blasthole Drilling, did not sign a CBA with Local 324 does not change the result.  <u>See</u> <u>National Leadburner Health and Welfare Fund v. O.G. Kelley & Co., Inc.</u>, 129 F.3d 372, 375 (6th Cir. 1997).

It is important to note that plaintiffs are not seeking contributions or liquidated damages for late payment for any months after December 2005.  Moreover, the audit does not show any delinquencies in contributions for the time period of October 2004 through January of 2005 which was during the time that Gilbert submitted contribution forms under the name of Diversified Blasthole Drilling.  Plaintiffs are also not seeking to impose liability on Diversified Blasthole Drilling, Inc. during the time in which it has been an active corporation, i.e. in January of 2006.  Plaintiffs are, however, seeking unpaid contributions during the time in which Gilbert was operating under the assumed names of Great Lakes Drilling and then Diversified Blasthole Drilling.  Plaintiffs seek an additional audit from April 2005 to December 2005, which may or may not reveal any additional delinquencies.

---

[2] Gilbert says that the forms were given to him with the name of the company already filled out and that he simply submitted the forms with payments.  It is not clear that this matters.  The fact is that Gilbert submitted the forms with payments.  He did not object to the name of the company, whether it be Great Lakes Drilling or Diversified Blasthole Drilling, on the form.

Moreover, to the extent that Gilbert asserts he is not responsible for paying liquidated damages based on a side agreement with the local union, he cannot prevail. Plaintiffs, as administrators of the various funds, are entitled to rely upon and enforce the terms of the CBA and is not obligated to abide by any side agreements that may have been had between an employer and a union.  See Northwestern Ohio Admin. V. Walcher & Fox, Inc., 270 F.3d 1018, 1025 (6th Cir. 2001)("ERISA funds are accorded a special status and are entitled to enforce the writing [generally, the CBA] regardless of what defenses may be available under the common law of contracts...[t]he law of this circuit does not require fund administrators to read the minds of contracting parties; rather, administrators may rely on the unambiguous terms of the writing.")  Moreover, there is no evidence in the record, other than Gilbert's vague testimony, of a side agreement.

V.  Conclusion

Overall, plaintiffs are entitled to summary judgment against Gilbert d/b/a/ Great Lakes Drilling and d/b/a Diversified Blasthole Drilling.  They are also entitled to summary judgment against Gilbert personally, as a fiduciary.  See 29 U.S.C. § 1109(a).

The Court is not unsympathetic to Gilbert's position.  The approximately $18,000.00 due as liquidated damages is harsh to say the least under the circumstances.  However, the Court is obligated to uphold the terms of the CBA which as explained above, is binding.[3]

---

[3] Notwithstanding the Court's ruling, the parties are not prevented from coming to compromise resolution regarding the amount of liquidated damages.

8

Accordingly, plaintiffs' motion for summary judgment is GRANTED.

SO ORDERED.

                                s/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE

Dated:  August 7, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 7, 2006, by electronic and/or ordinary mail.

                                s/Julie Owens
                                Case Manager, (313) 234-5160